SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Mirza M. Bulur v. Office of the Attorney General (A-30-24) (090126)**

**Argued March 31, 2025 -- Decided July 23, 2025**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court reviews the Attorney General's 2023 decision to supersede control of the Paterson Police Department. Plaintiffs, who are current and former City of Paterson officials, contend that the Legislature did not grant the Attorney General the power to supersede a municipal police department over the objection of local authorities and appealed the Attorney General's action. Defendants -- the Attorney General, the Office of the Attorney General (OAG), and the Officer in Charge (OIC) appointed to lead the Department -- assert that the Attorney General has authority to supersede the Department.

On March 27, 2023, weeks after a fatal police shooting involving Paterson police officers, Attorney General Matthew J. Platkin sent a letter to plaintiff André Sayegh, Mayor of Paterson. In the letter, the Attorney General announced that the OAG had "assumed responsibility for the day-to-day operations" of the Department, "inclusive of its Internal Affairs function." He stated that he had selected veteran New York Police Department (NYPD) officer Isa M. Abbassi to serve as the OIC beginning in May 2023. The Attorney General assigned Paterson's Chief of Police, Engelbert Ribeiro, to work at the Police Training Commission in Trenton and denied the City of Paterson's request to assign him to work at City Hall in Paterson during the period of supersession.

In the first of two actions that gave rise to this appeal, Paterson's Acting Public Safety Director Mirza M. Bulur and Ribeiro filed a complaint seeking a declaratory judgment that the Attorney General exceeded his authority when he superseded the leadership of the Department. In the second action, filed by Sayegh and Ribeiro against the OAG, the Attorney General, and Abbassi, plaintiffs asserted some of the same claims brought in the first action and also sought a declaration that Ribeiro reports to Sayegh; that Ribeiro is not subordinate to Abbassi and need not report to him; that Ribeiro's assignment to the Police Training Commission was ultra vires; and that Ribeiro cannot be disciplined by the Attorney General or the OAG if he fails to report to his assignment at the Commission. The actions were transferred to the Appellate Division and consolidated.

1

The appellate court reversed the Attorney General's administrative determination and directed defendants to reassign Ribeiro to Paterson, relinquish control of the Department to authorized city officials, and produce a narrative report summarizing their actions and accounting for their expenditures during the period of supersession. 480 N.J. Super. 395, 427 (App. Div. 2024). The Court granted certification, 260 N.J. 15 (2025), and stayed the Appellate Division's judgment pending consideration of the appeal, 260 N.J. 56 (2025).

**HELD:** The Court finds evidence that the Legislature intended to authorize the supersession of the Paterson Police Department in two statutes: (1) L. 2023, c. 94 (Chapter 94), which the Legislature adopted in the wake of the supersession to facilitate the OIC's leadership of the Department; and (2) L. 2023, c. 74, the appropriations bill for the fiscal year ending on June 30, 2024, in which the Legislature appropriated funds for the Attorney General's continued operation of the Department. The Court does not base its holding on other statutes and authorities cited by defendants in support of their argument that the Attorney General has general authority to supersede a municipal police department over local officials' objections if the Attorney General determines that such an action is warranted. The Court declines to reach the question whether the Attorney General has supersession authority in circumstances other than the specific setting of this case.

1. The New Jersey Constitution states that the powers of municipal corporations "shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law." N.J. Const. art. IV, § 7, ¶ 11. That provision is not an independent source of municipal power. Instead, the Constitution acknowledges that where municipal power to act exists, municipal action cannot run contrary to statutory or constitutional law. In this appeal, all parties agree that N.J.S.A. 40A:14-118 constitutes legislative authority for a municipality to establish and maintain its police department and appoint a chief of police to lead it. The parties dispute, however, whether the Legislature has limited that power by authorizing the Attorney General to supersede the municipality's oversight and maintenance of its police department when the municipality objects to supersession. (pp. 14-16)

2. The Court reviews in detail the statutes and other sources of authority on which defendants rely in asserting that the Legislature did limit that power, including the Criminal Justice Act, N.J.S.A. 52:17B-97 to -117. Despite its clear delegation of power to the Attorney General to oversee law enforcement and to supersede county prosecutors' offices in certain circumstances, the Criminal Justice Act does not expressly address the question presented in this appeal: whether the Attorney General may supersede municipal police departments when local officials object to supersession. Defendants also rely on N.J.S.A. 2A:158-4 and -5 and urge the Court

2

to rule that, because the Attorney General and prosecutors within their respective counties are vested with the same powers, the Attorney General, like the county prosecutor, has general authority to supersede a municipal police department with or without the municipality's consent. Another statute cited by defendants as a source of the Attorney General's supersession power is N.J.S.A. 40A:14-181, which addresses oversight of municipal police department internal affairs matters. But that statute is limited to police departments' internal affairs matters and does not provide for the Attorney General's complete supersession of a police department. Defendants also cite Attorney General Directive No. 2022-14, which states that the Attorney General has the power to "supersede and take control of an entire law enforcement agency" but identifies no statutory authority for that proposition. Defendants also cite prior examples of supersession they argue to support supersession here. (pp. 16-22)

3. The Court does not reach whether the Attorney General's claim of general authority to supersede municipal police departments without the consent of municipal officials, asserted in Directive No. 2022-14, is supported by the statutes or cases cited by defendants. Instead, the Court addresses a limited question: whether the Legislature authorized the specific supersession at issue in this appeal. The Court finds evidence of the Legislature's intent in two actions: (1) its enactment of Chapter 94 -- Paterson-specific legislation proposed because Abbassi, an NYPD officer, needed a waiver of the training requirements established by the Police Training Commission for all New Jersey police officers so that he could devote his full attention to his responsibilities as the Paterson Police Department's OIC -- and (2) its appropriation of funding for the Attorney General's oversight of the Department. The Court views Chapter 94 and the Legislature's appropriation of funds to express the Legislature's intent that in this instance, the Attorney General's supersession advances the Legislature's goals and should proceed. On that specific ground, the Court does not find that the Attorney General's supersession of the Paterson Police Department was arbitrary, capricious, or unreasonable, or that it lacked fair support in the record. (pp. 22-26)

4. This appeal raises significant questions about the claim in Directive No. 2022-14 that the Attorney General "may supersede and take control of an entire law enforcement agency" whenever he determines that step to be appropriate. The Legislature has the authority to address those questions directly and clarify its intent and expectations, should it decide to do so. (p. 26)

**REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.**

3

Mirza M. Bulur, in his official
capacity as the Acting Public Safety
Director for the City of Paterson
and Appropriate Authority, City of
Paterson Police Department, and
Engelbert Ribeiro, in his
official capacity as the
Police Chief of the City of
Paterson Police Department,

Plaintiffs-Respondents,

v.

The New Jersey Office of the
Attorney General, Matthew J. Platkin
in his official capacity as Attorney
General of the State of New Jersey,

Defendants-Appellants.

Andre Sayegh, in his official capacity
as the Mayor of the City of Paterson,
and Engelbert Ribeiro in his official
capacity as the Police Chief of the
City of Paterson Police Department,

Plaintiffs-Respondents,

v.

Isa M. Abbassi, in his official capacity
as Officer-in-Charge of the Paterson

Police Department, the New Jersey
Office of the Attorney General, and
Matthew J. Platkin, in his official
capacity as the Attorney General
of the State of New Jersey,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
480 N.J. Super. 395 (App. Div. 2024).

| Argued | Decided |
|---|---|
| March 31, 2025 | July 23, 2025 |

Michael L. Zuckerman, Deputy Solicitor General, argued the cause for appellants (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, and Michael L. Zuckerman, of counsel and on the briefs, and Leo R. Boerstoel, and Stephanie Mignogna, Deputy Attorneys General, on the briefs).

Christopher J. Gramiccioni argued the cause for respondents (Kingston Coventry, and Florio Kenny Raval, attorneys; Christopher J. Gramiccioni, Edward J. Florio, Christopher O'Kane Tew, and Emily A. Boodoo, on the brief).

Henal Patel argued the cause for amici curiae American Civil Liberties Union of New Jersey, League of Women Voters of New Jersey, New Jersey Institute for Social Justice, Reimagining Justice, Inc., and Salvation and Social Justice (American Civil Liberties Union of New Jersey Foundation, Lowenstein Sandler, and New Jersey Institute for Social Justice, attorneys; Henal Patel, Jeanne LoCicero, Ezra D. Rosenberg, Alexander Shalom, Parimal Garg, Ryan Haygood, and Micauri Vargas, on the brief).

Vito A. Gagliardi, Jr. argued the cause for amicus curiae New Jersey State Association of Chiefs of Police (Porzio, Bromberg & Newman, attorneys; Vito A. Gagliardi, Jr., of counsel, and David L. Disler and Thomas J. Reilly, on the brief).

Raymond M. Baldino submitted a brief on behalf of amicus curiae New Jersey State Policemen's Benevolent Association (Zazzali, P.C., attorneys; Raymond M. Baldino and Robert A. Fagella, of counsel and on the brief).

Richard J. Allen, Jr. submitted a brief on behalf of amicus curiae New Jersey Institute of Local Government Attorneys (Kipp & Allen, attorneys; Richard J. Allen, Jr., on the brief).

Lawrence S. Lustberg submitted a brief on behalf of amici curiae Chief J. Scott Thomson, Warren Faulk, Esq., and John Shjarback, Ph.D. (Gibbons, attorneys; Lawrence S. Lustberg and Ruth O'Herron, on the brief).

Trishka Waterbury Cecil submitted a brief on behalf of amicus curiae New Jersey State League of Municipalities (Mason, Griffin & Pierson, attorneys; Trishka Waterbury Cecil, of counsel and on the brief).

Peter G. Verniero submitted a brief on behalf of amici curiae Former Attorneys General of New Jersey John J. Degnan, Peter G. Verniero, John J. Farmer, Peter C. Harvey, Christopher S. Porrino, and Gurbir S. Grewal (Sills Cummis & Gross, and Patterson Belknap Webb & Tyler, attorneys; Peter G. Verniero and Peter C. Harvey, of counsel and on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we review the Attorney General's 2023 decision to supersede control of the Paterson Police Department. Plaintiffs, who are current and former City of Paterson officials, contend that the Legislature did not grant the Attorney General the power to supersede a municipal police department over the objection of local authorities and appealed the Attorney General's action. Defendants -- the Attorney General, the Office of the Attorney General (OAG), and the Officer in Charge (OIC) appointed to lead the Department -- assert that the Attorney General has authority to supersede the Department.

The Appellate Division held that the Attorney General exceeded his statutory powers when he conducted the supersession at issue and reversed the Attorney General's decision. Bulur v. Off. of the Att'y Gen., 480 N.J. Super. 395, 407-27 (App. Div. 2024).

We granted certification and now reverse the Appellate Division's judgment. We find evidence that the Legislature intended to authorize the supersession of the Paterson Police Department in two statutes: (1) L. 2023, c. 94 (Chapter 94), which the Legislature adopted in the wake of the supersession to facilitate the OIC's leadership of the Department; and (2) L. 2023, c. 74, the appropriations bill for the fiscal year ending on June 30, 2024, in which the Legislature appropriated funds for the Attorney General's continued operation

4

of the Department. We do not base our holding on other statutes and authorities cited by defendants in support of their argument that the Attorney General has general authority to supersede a municipal police department over local officials' objections if the Attorney General determines that such an action is warranted. We decline to reach the question whether the Attorney General has supersession authority in circumstances other than the specific setting of this case.

I.

A.

On March 27, 2023, weeks after a fatal police shooting involving Paterson police officers, Attorney General Matthew J. Platkin sent a letter to plaintiff André Sayegh, Mayor of Paterson. In the letter, the Attorney General announced that the OAG had "assumed responsibility for the day-to-day operations" of the Department, "inclusive of its Internal Affairs function."[1] He stated that he had selected veteran New York Police Department (NYPD) officer Isa M. Abbassi to serve as the OIC beginning in May 2023.

---

[1] In 2021, the Attorney General and the Passaic County Prosecutor announced that they jointly "assumed responsibility for the internal affairs functions" of the Department, with the Prosecutor's Office maintaining "full oversight" of the Department's Internal Affairs Division. That arrangement remained in effect when the Attorney General superseded the Department in 2023. The Attorney General's actions with regard to the Internal Affairs Division are not challenged in this appeal.

The Attorney General asserted in the letter that the supersession was "necessitated by, among other things, the loss of faith in the leadership of the Department, longstanding fiscal challenges, and mounting public safety concerns in the City of Paterson." He stated that his authority to supersede was "derived from the Criminal Justice Act of 1970, N.J.S.A. 52:17B-97 to -117, and N.J.S.A. 2A:158-4 and -5," and that it was "consistent with both decades of practice by the Attorney General and County Prosecutors" and "a substantial body of case law recognizing the Attorney General's role in overseeing law enforcement agencies as the chief law enforcement officer in the State and the County Prosecutor as the chief law enforcement officer in the county."

The Attorney General assigned Paterson's Chief of Police, Engelbert Ribeiro, to work for six months at the Police Training Commission in Trenton under the supervision of the Division of Criminal Justice and denied the City of Paterson's request to assign him to work at City Hall in Paterson during the period of supersession. When Ribeiro's six-month assignment neared its end, the OAG extended the assignment and OIC Abbassi directed Ribeiro to work for an additional six months at the Police Training Commission. The Attorney General appointed an interim OIC pending Abbassi's assumption of his responsibilities as OIC. The interim OIC, representing the Department,

entered into a memorandum of understanding with the OAG, which remains in effect.

Abbassi assumed the role of OIC on May 9, 2023 and served in that position until November 22, 2024. On that date, Abbassi was replaced as OIC by a longtime Paterson police officer, who leads the Department today.

## B.

## 1.

In the first of two actions that gave rise to this appeal, Paterson's Acting Public Safety Director Mirza M. Bulur and Ribeiro filed a verified complaint against the OAG and the Attorney General in the Law Division on October 6, 2023. They sought a declaratory judgment that the Attorney General exceeded his authority when he superseded the leadership of the Department. Bulur and Ribeiro sought injunctive relief including an order restoring control of the Department, except its Internal Affairs Division, to the City of Paterson; recognizing Ribeiro as the duly appointed Chief of Police; requiring a detailed accounting of the Department's operations while under the OAG's and the OIC's control; and restricting the presence of OAG personnel in the Paterson Public Safety Building. By order dated October 23, 2023, the Law Division granted the Attorney General's motion for a transfer of venue to the Appellate Division.

In the second action, filed in the Law Division by Sayegh and Ribeiro against the OAG, the Attorney General, and Abbassi on November 28, 2023, plaintiffs asserted some of the same claims brought in the first action. They also sought a declaration that Ribeiro reports to Sayegh; that Ribeiro is not subordinate to Abbassi and need not report to him; that Ribeiro's assignment to the Police Training Commission was ultra vires; and that Ribeiro cannot be disciplined by the Attorney General or the OAG if he fails to report to his assignment at the Commission.

By order dated December 8, 2023, the Law Division granted the motion of the OAG, the Attorney General, and Abbassi to transfer the case to the Appellate Division.

2.

Plaintiffs appealed the Attorney General's supersession and moved to consolidate the two appeals. The Appellate Division granted plaintiffs' motion to consolidate. The appellate court granted amicus curiae status to the New Jersey State Association of Chiefs of Police (NJSACP) and the New Jersey State League of Municipalities (NJSLM).

In a published opinion, the Appellate Division analyzed the statutes on which the Attorney General relied as sources of authority to supersede the

8

Department.  Bulur, 480 N.J. Super. at 415-18, 419-23.[2]  It first determined that two provisions of the Criminal Justice Act cited by defendants, N.J.S.A. 52:17B-106 and -107, granted the Attorney General the power to supersede a county prosecutor's office, but "are silent concerning the [Attorney General's] direct supersession of a municipal police department."  Id. at 416-17.  The appellate court next considered N.J.S.A. 40A:14-181, finding in that statute implied legislative authority for the Attorney General "to use supersession to enforce the OAG's internal affairs guidelines with all law enforcement agencies."  Id. at 418.  The Appellate Division reviewed Chapter 94's text and legislative history, finding no support for "the notion that the Legislature intended" the provision "to authorize an expansion of defendants' supersession powers."  Id. at 422.

The Appellate Division also considered the non-statutory authority cited by defendants on appeal as a basis for supersession in this case.  The appellate court viewed Attorney General Law Enforcement Directive No. 2022-14, Transparency in Internal Affairs Investigations (Nov. 15, 2022) to represent "the OAG's adoption of a regulation which contemplates unqualified supersession of law enforcement agencies besides county prosecutors," and

---

[2]  The Appellate Division rejected defendants' argument that plaintiffs' claims were untimely.  Id. at 407-15.  That ruling is not challenged in this appeal.

noted that "[s]ince the passage of the directive, no act of the Legislature has expressly authorized the OAG's unilateral extension of its supersession powers beyond the scope of N.J.S.A. 52:17B-106 and -107, or N.J.S.A. 40A:14-181." Id. at 419. The appellate court found no implied authority in court decisions cited by defendants for the Attorney General to "directly supersede a municipal police department." Id. at 423-27 (citing State v. Winne, 12 N.J. 152, 168-69 (1953); Williams v. Borough of Clayton, 442 N.J. Super. 583, 587 (App. Div. 2015); Passaic Cnty. PBA Local 197 v. Off. of Passaic Cnty. Prosecutor, 385 N.J. Super. 11, 13 (App. Div. 2006)).

The appellate court therefore reversed the Attorney General's administrative determination. Id. at 427. It directed defendants to reassign Ribeiro from the Police Training Commission to Paterson, relinquish control of the Department to authorized city officials, and produce a narrative report to plaintiffs summarizing their actions and accounting for their expenditures during the period of supersession. Ibid. The appellate court entered a temporary stay of its judgment. Ibid.

3.

We granted defendants' petition for certification, 260 N.J. 15 (2025), and stayed the Appellate Division's judgment pending our consideration of the appeal, 260 N.J. 56 (2025).

We maintained the amicus curiae status of the NJSACP and the NJSLM. In addition, we granted amicus curiae status to the American Civil Liberties Union of New Jersey, League of Women Voters of New Jersey, New Jersey Institute for Social Justice, Reimagining Justice, Inc., and Salvation and Social Justice, jointly represented (ACLU); the New Jersey State Policemen's Benevolent Association (NJSPBA); the New Jersey Institute of Local Government Attorneys (NJILGA); former Camden Chief of Police J. Scott Thomson, former Camden County Prosecutor Warren Faulk, and police reform expert John Shjarback, jointly represented (Camden Amici); and Former Attorneys General of New Jersey John J. Degnan, Peter G. Verniero, John J. Farmer, Peter C. Harvey, Christopher S. Porrino, and Gurbir S. Grewal, jointly represented (Former Attorneys General Amici).

## II.

Defendants argue that based on statutory authority, Directive No. 2022-14, case law, and historical practice, the Attorney General had the power to order supersession in this case. They claim that N.J.S.A. 52:17B-106 and -107 grant the Attorney General broad authority to supersede all county and municipal law enforcement, including police departments, and that Directive No. 2022-14 confirms that delegation of power. Defendants view Chapter 94 and the Legislature's appropriations for the Attorney General's oversight of

the Department to confirm the Legislature's intent that the Attorney General supersede in this case.

Plaintiffs assert that the supersession of the Department was an ultra vires act contrary to constitutional and statutory power granted to municipalities. They argue that defendants conflate the Attorney General's oversight of law enforcement under the Criminal Justice Act and other statutes with the authority to supersede a municipal police department over the objection of local officials. Plaintiffs view Chapter 94 as a "grant of procedural expediency" for settings in which the Attorney General has conducted a lawful supersession, which they contend did not occur here.

The ACLU asserts that the Attorney General's power to supersede municipal control of local police departments is an essential tool to address police misconduct. The Camden Amici recount the police reforms achieved in the City of Camden following the Attorney General's supersession of the Camden Police Department in 2003. The Former Attorneys General Amici view the Attorney General's supersession authority to be grounded in statutes, court decisions, and historical practice.

NJSACP asserts that the Appellate Division correctly concluded that the Attorney General lacks statutory supersession authority over local police departments. NJSPBA contends that no constitutional or statutory provision

12

authorizes the Attorney General to assume control over a local police department over the municipality's objection. NJILGA argues that any claim that the Attorney General has implied authority to supersede a local police department contravenes Article IV, Section VII, Paragraph 11 of the New Jersey Constitution. NJSLM states that the Criminal Justice Act grants the Attorney General only the power to supersede county prosecutors, not the power to supplant local control of municipal police departments.

### III.

### A.

The Attorney General's supersession of the Paterson Police Department is a final agency determination entitled to deference on appellate review; we will uphold that action "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Proposed Constr. of Compressor Station (CS327), 258 N.J. 312, 324 (2024) (quoting Mount v. Bd. of Trs., 233 N.J. 402, 418 (2018)). When a court conducts that inquiry, it determines

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

13

[In re Ambroise, 258 N.J. 180, 197-98 (2024) (quoting In re Carter, 191 N.J. 474, 482 (2007)).]

We review de novo an agency's construction of a statute. In re Proposed Constr. of Compressor Station (CS327), 258 N.J. at 324.

B.

The New Jersey Constitution states that "[t]he provisions of this Constitution and of any law concerning municipal corporations formed for local government" shall be "liberally construed in their favor" and that the powers of municipal corporations "shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law." N.J. Const. art. IV, § 7, ¶ 11.

That provision is not "an independent source of municipal power." Fraternal Ord. of Police, Newark Lodge 12 v. City of Newark, 244 N.J. 75, 93 (2020); accord Fred v. Mayor & Council of Old Tappan, 10 N.J. 515, 518 (1952). Instead, the Constitution "acknowledges the omnipresent brake on the exercise of municipal authority: where municipal power to act exists, municipal action cannot run contrary to statutory or constitutional law." Fraternal Ord. of Police, 244 N.J. at 93.

14

Pursuant to N.J.S.A. 40:41A-28, "[m]unicipalities are and shall remain the broad repository of local police power in terms of the right and power to legislate for the general health, safety and welfare of their residents." Accordingly, "[t]he governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof." N.J.S.A. 40A:14-118. The statute requires that such an ordinance -- "in a manner consistent with the form of government adopted by the municipality and with general law" -- provide for "a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members." Ibid. "The ordinance," further, "may provide for the appointment of a chief of police"; if a chief of police is appointed, that chief "shall be the head of the police force," "shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof," and shall perform other duties prescribed by the statute. Ibid.[3]

---

[3] The "appropriate authority" is defined as "the mayor, manager, or such other appropriate executive or administrative officer, such as a full-time director of public safety, or the governing body or any designated committee or member thereof, or any municipal board or commission established by ordinance for

15

In this appeal, all parties agree that N.J.S.A. 40A:14-118 constitutes legislative authority for a municipality to establish and maintain its police department and appoint a chief of police to lead it. The parties dispute, however, whether the Legislature has limited that power by authorizing the Attorney General to supersede the municipality's oversight and maintenance of its police department when the municipality objects to supersession. Accordingly, we review the statutes and other sources of authority on which defendants rely.

In the Criminal Justice Act, N.J.S.A. 52:17B-97 to -117, the Legislature declared it to be New Jersey's public policy

> to encourage cooperation among law enforcement officers and to provide for the general supervision of criminal justice by the Attorney General as chief law enforcement officer of the State, in order to secure the benefits of a uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State.
>
> [N.J.S.A. 52:17B-98.]

The Legislature defined the Attorney General's powers and duties regarding the enforcement of criminal laws to be "the powers and duties now

---

such purposes," as "provided by ordinance in a manner consistent with the degree of separation of executive and administrative powers from the legislative powers provided for in the charter or form of government either adopted by the municipality or under which the governing body operates." N.J.S.A. 40A:14-118.

or hereafter conferred upon or required of the Attorney General, either by the Constitution or by the common or statutory law of the State, and as specifically but not exclusively detailed in this act." Id. at -102.

In N.J.S.A. 52:17B-105, the Legislature provided that upon the request of a county prosecutor for the Attorney General's assistance "in the conduct of any criminal investigation or proceeding," the Attorney General may "take whatever action he deems necessary to assist the county prosecutor in the discharge of his duties," and "shall be authorized to exercise all the powers and perform all the duties which by law are conferred upon or required of the county prosecutor making such request."

The two provisions of the Criminal Justice Act that are central to defendants' argument, N.J.S.A. 52:17B-106 and -107, address a specific type of supersession: the Attorney General's supersession of a county prosecutor's powers and duties. N.J.S.A. 52:17B-106 provides that "[w]henever requested in writing by the Governor, the Attorney General shall . . . supersede the county prosecutor for the purpose of prosecuting all of the criminal business of the State in" that county, and shall "intervene in any investigation, criminal action, or proceeding instituted by the county prosecutor, and appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions, or proceedings as shall be necessary for the protection of the

rights and interests of the State." N.J.S.A. 52:17B-106 authorizes but does not require the Attorney General to supersede the county prosecutor's office "whenever requested in writing by a grand jury or the board of chosen freeholders of a county or the assignment judge of the superior court for the county."

N.J.S.A. 52:17B-107(a) provides in part that

> (1) [w]henever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may (a) supersede a county prosecutor in any investigation, criminal action or proceeding, (b) participate in any investigation, criminal action or proceeding, or (c) initiate any investigation, criminal action or proceeding.
>
> (2) Whenever a person's death occurs during an encounter with a police officer or other law enforcement officer acting in the officer's official capacity or while the decedent was in custody, the Attorney General shall supersede the county prosecutor of the county in which the incident occurred for the purpose of conducting, personally or by a designated deputy or assistant attorney general, any investigation, criminal action or proceeding concerning the incident.

Finally, the Act generally imposes on all law enforcement officers, including police officers, a duty "to cooperate with and aid the Attorney General and the several county prosecutors in the performance of their respective duties." Id. at -112(a).

18

Despite the Criminal Justice Act's clear delegation of power to the Attorney General to oversee law enforcement and to supersede county prosecutors' offices in certain circumstances, the Act does not expressly address the question before us: whether the Attorney General may supersede municipal police departments when local officials object to supersession. See Id. at -97 to -117.

Defendants also rely on N.J.S.A. 2A:158-4 and -5. N.J.S.A. 2A:158-4 provides that "[t]he criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors." N.J.S.A. 2A:158-5 states that "[e]ach prosecutor shall be vested with the same powers and be subject to the same penalties, within his county, as the [A]ttorney [G]eneral shall by law be vested with or subject to," and the prosecutor "shall use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." Defendants assert that county prosecutors have the authority to supersede municipal police departments. Reasoning that the Attorney General and prosecutors within their respective counties are vested with the same powers, defendants urge us to rule that the Attorney General, like the county prosecutor, has general authority to supersede a municipal police department with or without the municipality's consent.

19

Another statute cited by defendants as a source of the Attorney General's supersession power is N.J.S.A. 40A:14-181, which addresses oversight of municipal police department internal affairs matters. Among other requirements, N.J.S.A. 40A:14-181 mandates that law enforcement agencies, including police departments, "adopt and implement guidelines" that are "consistent with the guidelines governing the 'Internal Affairs Policy and Procedures' of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety." N.J.S.A. 40A:14-181, however, is limited to police departments' internal affairs matters and does not provide for the Attorney General's complete supersession of a police department.

Defendants also rely on non-statutory authority. They cite Directive No. 2022-14, Transparency in Internal Affairs Investigations (November 15, 2022). The Attorney General promulgated Directive No. 2022-14 following our decision in Rivera v. Union County Prosecutor's Office, 250 N.J. 124, 145-50 (2022), in which we applied the common law right of access to law enforcement internal affairs reports. The Directive focuses in part on internal affairs; it provides that the Attorney General has the right to "(a) supersede a county prosecutor or other law enforcement agency in any investigation, criminal action or proceeding; (b) participate in any investigation, criminal

20

action or proceeding; or (c) initiate any investigation, criminal action or proceeding," and that "[t]his statutory authority applies fully to any and all aspects of the internal affairs process." Directive No. 2022-14 at 10-11.

In addition to addressing internal affairs matters, Directive No. 2022-14 provides for Attorney General supersession of police departments generally:

> The Attorney General may supersede and take control of an entire law enforcement agency, may supersede in a more limited capacity and take control of the internal affairs function of an agency, or may supersede and take control of a specific case or investigation. Whenever the Attorney General determines that supersession is appropriate, the Attorney General may assume any or all of the duties, responsibilities and authority normally reserved to the chief law enforcement executive and the agency. Every member of the agency, including the chief law enforcement executive, has a duty to cooperate fully with the Attorney General during the investigation and adjudication of such matters. Within their respective counties, the County Prosecutors shall be vested with the same authority to supersede possessed by the Attorney General on a statewide basis. See N.J.S.A. 2A:158-5.
>
> [Id. at 11.]

In the Directive, the Attorney General cites N.J.S.A. 2A:158-5's provision that a prosecutor has the same powers within the county as are vested in the Attorney General. But the Directive identifies no statutory authority expressly stating that the Attorney General has the power to "supersede and take control of an entire law enforcement agency." See ibid.

21

Defendants also cite case law for the proposition that the Attorney General has the power to supersede a municipal police department over the objection of local officials. They point to twenty-six prior supersessions of local law enforcement agencies in the past twenty-five years and reject the Appellate Division's grounds for distinguishing those examples of supersession from the supersession at issue here -- that either the superseding entity was a prosecutor's office, not the Attorney General, or that local officials consented to the supersession. See Bulur, 480 N.J. Super. at 424-27.

We do not reach the question whether the Attorney General's claim of general authority to supersede municipal police departments without the consent of municipal officials, asserted in Directive No. 2022-14, is supported by the Criminal Justice Act, N.J.S.A. 52:17B-106, -107, and -112(a); by N.J.S.A. 2A:158-4, -5; by N.J.S.A. 40A:14-181; by case law recounting prior instances of Attorney General or prosecutor supersession; or by a combination of those authorities. Instead, we address a limited question: whether the Legislature authorized the specific supersession at issue in this appeal. For the reasons stated below, we find evidence of the Legislature's intent in two actions: its enactment of Chapter 94, and its appropriation of funding for the Attorney General's oversight of the Department.

C.

After the Attorney General's announcement that he had assumed control of the Department and had appointed Abbassi as OIC, the Legislature enacted Chapter 94. As explained in the testimony of the OAG's Director of Legislative Affairs before the Senate Law and Public Safety Committee and the Assembly Judiciary Committee, the legislation was proposed because Abbassi, an NYPD officer, needed a waiver of the training requirements established by the Police Training Commission for all New Jersey police officers so that he could devote his full attention to his responsibilities as the Paterson Police Department's OIC.[4] Asked during the Assembly Judiciary Committee hearing whether the bill was "about Paterson," the Director confirmed that it was.

Entitled "[a]n Act concerning an appointment when the Attorney General has superseded a law enforcement agency," Chapter 94 provides that

> 1. a. The Attorney General, upon superseding a law enforcement agency in a city of the first class having a population of less than 200,000 according to the 2020 federal decennial census, may appoint a person who has not previously

___

[4] See Hearing Before the S. L. & Pub. Safety Comm., at 0:18:20 to 0:22:11 (June 12, 2023), accessible via https://www.njleg.state.nj.us/archived-media/2022/SLP-meeting-list; Hearing Before the Assemb. Judiciary Comm., at 3:19:50 to 3:31:00 (June 15, 2023), accessible via https://www.njleg.state.nj.us/archived-media/2022/SLP-meeting-list.

23

satisfied the applicable law enforcement officer training requirements established by the Police Training Commission . . . to serve as officer in charge of that law enforcement agency during the period of time during which the law enforcement agency is superseded. A person appointed pursuant to this section shall have previously served as a superior police officer and possess at least 10 years administrative and supervisory police experience.

b. Notwithstanding the provision of subsection a. of section 3 of L. 1961, c. 56 ([N.J.S.A.] 52:17B-68) or any other law, the Attorney General may establish and administer specific training requirements for the person appointed pursuant to subsection a. of this section that take into account the person's prior training, education, experience and qualifications in light of the requirements of the position.

c. The Attorney General shall ensure that the training required pursuant to subsection b. of this section is completed within one year of appointment, provided that the appointee may serve as officer in charge pending completion of the specific training requirements. Upon completion of the training requirements established by the Attorney General pursuant to this section, the appointee shall be deemed eligible to be licensed in accordance with L. 2022, c. 65 ([N.J.S.A.] 52:17B-71a et al.).

d. Nothing in this section shall be construed to limit the Attorney General's authority as chief law enforcement officer of the State.

2. This act shall take effect immediately, shall be retroactive to March 1, 2023, and shall expire upon the termination of the period of time during which the law

24

> enforcement agency in a city of the first class having a population of less than 200,000 according to the 2020 federal decennial census is superseded by the Attorney General.
>
> [L. 2023, c. 94.]

Chapter 94 was enacted on July 3, 2023. Ibid.

In addition, in L. 2023, c. 74, the Legislature appropriated $10,000,000 as direct state services for "Paterson Police Department -- State Costs," to cover costs incurred by the State in connection with operating the Department pursuant to the Attorney General's supersession. L. 2023, c. 74, § 1, at 164. The Legislature noted that "[i]n addition to the amount hereinabove appropriated for the Paterson Police Department -- State Costs, there are appropriated such additional amounts as may be necessary for the same purpose, subject to the approval of the Director of the Division of Budget and Accounting." Id. at 165.

We disagree with the Appellate Division's conclusion that "the Legislature did not intend to authorize a supersession" of the Paterson Police Department's daily operations when it enacted Chapter 94. Bulur, 480 N.J. Super. at 422-23. The Legislature did not question, much less invalidate, the supersession here; to the contrary, it expressly acknowledged that the Attorney General had superseded control of the Department and took affirmative steps to ensure that the OIC would succeed in his crucial role in that supersession.

See L. 2023, c. 94. The Legislature then specifically appropriated funds for the State's operation of the Department during the period in which municipal control was superseded. L. 2023, c. 74, § 1, at 164.

We view Chapter 94 and the Legislature's appropriation of funds to express the Legislature's intent that in this instance, the Attorney General's supersession advances the Legislature's goals and should proceed.

On that specific ground, we do not find that the Attorney General's supersession of the Paterson Police Department was arbitrary, capricious, or unreasonable, or that it lacked fair support in the record. In re Proposed Constr. of Compressor Station (CS327), 258 N.J. at 324. We reverse the Appellate Division's determination that the Attorney General's action in this case was improper. See Bulur, 480 N.J. Super. at 427.

D.

This appeal raises significant questions about the Attorney General's claim that he "may supersede and take control of an entire law enforcement agency" whenever he determines that step to be appropriate. Directive No. 2022-14 at 11. The Legislature has the authority to address those questions directly and clarify its intent and expectations, should it decide to do so.

IV.

The judgment of the Appellate Division is reversed.

CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.